IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLYMPIA EXPRESS, INC., an Illinois corporation; and NEOTOURS, LTD., an Illinois corporation, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 02 C 2858 ) ) Magistrate Judge Sidney I. Schenkier |
| LINEE AEREE ITALIANE S.P.A., D/B/A ALITALIA AIRLINES, a foreign corporation, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court are Olympia Express, Inc.'s and Neotours, Ltd.'s ("Plaintiffs") motions to strike the reports and bar the testimony of Alexander Anolik ("Anolik")(doc. # 66) and Frederic E. Lieber ("Lieber")(doc. # 63), two of Linee Aeree Italiane S.P.A. d/b/a Alitalia Airlines' ("Alitalia") expert witnesses. For the reasons set forth below, the Court denies Plaintiffs' motion to strike the report and bar the testimony of Anolik, and grants in part and denies in part Plaintiffs' motion to strike the report and bar the testimony of Lieber.

### BACKGROUND

Plaintiffs are family-owned and operated travel businesses with their principal places of business located in Illinois. (First Am. Complt. ¶¶ 1, 5.) Alitalia, an Italian corporation, is an airline service provider that does business in the United States. (*Id.* ¶ 2.)

This case is centered around the parties' twenty-year business relationship, through which Plaintiffs have provided a travel market for Alitalia from the Chicago Gateway (O'Hare International

Airport) to locations in Greece. (First Am. Complt ¶8.) That business relationship was conducted pursuant to various written contracts, the last of which was signed by the parties in 2000 (the "July 2000 Agreement"). (*Id.* ¶ 18.) Plaintiffs allege Alitalia breached the July 2000 Agreement which had designated Plaintiffs as Alitalia's exclusive distributor of airline tickets and travelers to Athens and Thessaloniki, Greece. (*Id.*) Plaintiffs further assert other breaches of the July 2000 Agreement, alleging *inter alia* that Alitalia unilaterally imposed more restrictive terms and conditions than contemplated by the July 2000 Agreement, threatened to reduce Plaintiffs' block space (*i.e.*, number of seats "set aside"), increased net contract fares, and reached agreements with other travel agencies to provide traffic previously provided by Plaintiffs. (*Id.* ¶¶ 20(a)-(d).) In this lawsuit, Plaintiffs seek to recover damages they allegedly sustained as a result of Alitalia's claimed breach of the July 2000 Agreement. (*Id.* ¶ 24.)

Plaintiffs have filed the subject motions and seek to bar the reports and testimony of Anolik, Alitalia's travel law expert, and Lieber, Alitalia's damages expert. Alitalia is offering Anolik's report and testimony to provide opinions as to the background and general custom and practice of the airline and travel and tourism industry, in order to explain the parties' business relationship and July 2000 Agreement. Lieber's report and testimony are being offered to challenge or rebut certain portions of the opinion of Plaintiffs' damages expert, R. James Alerding ("Alerding") and provide an alternative calculation of damages, assuming a breach of the July 2000 Agreement on the part of Alitalia.

## LEGAL STANDARDS

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the principles articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See*

2

*Smith v. Ford Motor Co.*, 215 F.3d 713, 717-18 (7th Cir. 2000). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed.R.Evid.702.

In *Daubert*, the Supreme Court held that trial judges must play a "gatekeeping" role and determine the admissibility of expert testimony as a preliminary matter under Fed.R.Evid.104(a). *Daubert*, 509 U.S. at 592, 597. A court's gatekeeping role encompasses "mak[ing] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Rule 702 inquiry is "a flexible one" which focuses "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594-95; *see also United States v. Hall*, 165 F.3d 1095, 1101 (7th Cir. 1991)("trial court has broad discretion under Rule 702 of the Federal Rules of Evidence to admit or exclude evidence").

Under *Daubert*, it is the trial court's task to ensure that expert testimony is both reliable and relevant. *Daubert*, 509 U.S. at 597. To assess the reliability of proposed expert testimony, "the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions." *Smith*, 215 F.3d at 718 ("[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact . . . "). When assessing the relevance of proposed expert testimony, "the district court must consider

3

whether the testimony will assist the trier of fact with its analysis of any of the issues involved in the case." *Id.* An "expert need not have an opinion on the ultimate question to be resolved by the trier of fact in order to satisfy this requirement." *Id.*

It bears noting that under Rule 702, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in LeFloure, County, Mississippi,* 80 F.3d 1074, 1078 (5th Cir. 1996)(citing *Daubert,* 509 U.S. at 596). To the contrary, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596. Thus, under Rule 702, "[t]he trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Smith,* 215 F.3d at 719. "The question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury [or trier of fact] . . . " *Id.*

## ANALYSIS

### I. PLAINTIFFS' MOTION TO STRIKE THE REPORT AND BAR THE TESTIMONY OF ALITALIA'S TRAVEL LAW EXPERT ALEXANDER ANOLIK.

Plaintiffs argue that Anolik's expert report should be stricken and his trial testimony barred because he is offering legal opinions and conclusions that do not assist the trier of fact and are not determinative of a fact in issue pursuant to Rule 702. (Pls.' Mem. at 3-7.) Specifically, Plaintiffs contend that Anolik's opinions as to purported breaches of contract by Plaintiffs would not assist the trier of fact and are not proper under Rule 702, because case law instructs that experts are not permitted to offer opinions and conclusions about legal issues that simply tell the trier of fact what

result to reach. (*Id.* at 3-5.)¹ Plaintiffs also assert that Anolik's opinions as to the interpretation of the contract at issue (*i.e.*, July 2000 Agreement) and the legal effect of Plaintiffs' conduct are improper, because contract interpretation is an issue for the jury or trier of fact and the legal effect of the parties' conduct is an issue for the judge. (*Id.* at 5.) Moreover, Plaintiffs claim that Anolik's opinions regarding purported breaches of contract by Plaintiffs are improper under Rule 702 because such purported breaches of contract are not a fact in issue in this case. (*Id.* at 6-7.)

Alitalia, on the other hand, argues that Anolik is neither offering a legal opinion about the ultimate issue in the case to be decided, nor offering legal opinions or conclusions as to whether Plaintiffs breached the July 2000 Agreement between the parties. (Def.'s Mem. at 4-5.) Alitalia explains that Anolik's use of the term "breach of contract" was "unfortunate," and denies that Anolik intends to offer an opinion that the contract was breached. Rather, according to Alitalia, Anolik's opinions center around the custom and practice of the airline and travel and tourism industry, and are relevant to explain the relationship of the parties in light of these customs and practices. (*Id.* at 5-6.) Alitalia also asserts that Plaintiffs unfairly characterize Anolik's testimony by omitting relevant portions of Anolik's testimony which indicate he is testifying with respect to the custom and practice of the airline and travel and tourism industry and not legal issues. (*Id.* at 6-8.)²

---

¹In his report, Anolik states: "I have been asked to opine on whether there were breaches of contract by the Plaintiffs in their relationship with Alitalia Airlines and to comment on the custom and practice of the industry with regards to a variety of practices . . . " (Pls.' Mem. at 3.)

²Alitalia states that Plaintiffs concede that Anolik is qualified as an expert on matters related to the travel industry and "[c]learly . . . qualifies as an expert in the travel industry field." (Def.'s Mem. at 2.) However, Plaintiffs do not concede that Anolik's credentials or experience in the travel industry qualify him as an expert. (Pls.' Reply at 3 n.3.) They further argue that Anolik's credentials are irrelevant to his ability, as an expert, to offer legal opinions and conclusions. (*Id.*)

5

The Court initially notes that Alitalia is wise to abandon any attempt to offer Anolik's report and testimony to assert legal opinions or conclusions; the Court has difficulty envisioning how evidence proffered for this purpose would be admissible. But, we conclude that Anolik's opinions regarding the custom and practice of the airline and travel and tourism industry are relevant, and are an appropriate topic of expert testimony. *See e.g., Rush Presbyterian St. Luke's Med. Ctr. v. Safeco Ins. Co. of Am.*, 722 F.Supp.485, 497 (N.D. Ill.1989)("it is permissible for experts to testify about the customs and usages in an industry, and to amply the terms of a contract if customs and usages shed light on the meaning of those terms").

While not contesting that expert testimony on industry custom and practice can be helpful, in a given case, Alitalia argues that it would not be helpful here because the July 2000 Agreement allegedly is unique. (Pls.' Mem. at 7-11.) Thus, Plaintiffs assert, as a matter of law, that the parties' course of performance and course of dealing throughout their twenty-year business relationship govern the July 2000 Agreement and the interpretation of its terms and conditions, rather than the general custom and practice of the airline and travel and tourism industry. (*Id.* at 8.) Alitalia, however, contends that the July 2000 Agreement is not unique, and that the only unusual thing about that Agreement was its five year term. (Def.'s Mem. at 10-11.)

On the current state of the record, the Court cannot determine whether the July 2000 Agreement, or the parties' business relationship, was unique. Anolik's opinion on custom and practice of the airline and travel and tourism industry may shed some light on that very question. Moreover, because this case will involve a bench trial, any concerns regarding whether Anolik's custom and practice opinions will unfairly prejudice the jury are not present. Accordingly, we deny the motion to strike Anolik's report and to bar his testimony, with the understanding that Anolik will

6

not testify to the legal conclusions that Alitalia has represented he does not plan to present.[3]

## II. PLAINTIFFS' MOTION TO STRIKE THE REPORT AND BAR THE TESTIMONY OF ALITALIA'S DAMAGES EXPERT FREDERIC E. LIEBER.

Plaintiffs argue that Lieber's expert report should be stricken and his trial testimony barred because his opinions about the travel and tourism market as well as economic conditions are not based on sufficient facts or data and are unreliable. (Pls.' Mem. at 3-6.) Plaintiffs contend that Lieber is not a qualified expert with respect to the travel and tourism industry. (*Id.* at 4-5.) Plaintiffs also assert that Lieber failed to perform even the most basic background research and work to support his broad and generalized opinions about the travel and tourism industry and Plaintiffs anticipated performance in that industry. (*Id.* at 4-6.)[4] Plaintiffs contend that Lieber failed to apply reliable

---

[3]Plaintiffs also assert that Anolik should be excluded as an expert in this matter based on his previous representation as counsel for Plaintiffs and their sole shareholder, Christos D. Sotos. (Pls.' Mem. at 11-12.) Plaintiffs contend that Anolik, who is a licensed attorney in California, "shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." Cal.R.Prof. Conduct 3-310(E). The Court finds that even assuming the subject provision is applicable, it is inapposite here because there is no evidence in the record to suggest that Anolik has confidential information from Plaintiffs (his "former clients") that is material to his current employment by Alitalia.

[4]For example, Plaintiffs contend that Lieber failed to perform even the most basic work to support his broad and generalized opinions about the market conditions in which Plaintiffs operated because *inter alia* he (1) read only the deposition testimony of Alerding and ignored other key deposition testimony that provided background information concerning the ethnic market environment and market conditions in which Plaintiffs operated; (2) criticized Plaintiffs' base volume assumption of 9,000 passengers in 2001 as unsupportable and testified that he put no substantive reliance on Alitalia's history of confirming block space for Plaintiffs even though Alitalia estimated and confirmed 8,600 blocked seats for Plaintiffs' use in 2001; (3) conducted no interviews of current or former Alitalia employees or other travel agents; (4) recognized that Plaintiffs operated in a "niche market" and that the Greek ethnic makeup of Plaintiffs' clientele was a relevant consideration in determining Plaintiffs' passenger volumes, however, no analysis was conducted to determine the travel patterns of ethnic Greeks; (5) relied on a summary of
(continued...)

7

principles and methods to the facts of the case in a reliable manner by either ignoring or dealing inconsistently with the fundamental principles of lost profits damages methodology, such as by failing to distinguish between fixed and variable costs. (*Id.* at 2, 10-11.) Thus, Plaintiffs argue that Lieber's opinions and testimony should be excluded because they fall short of the requirements of Rule 702. (*Id.* at 4-6.)

Alitalia, on the other hand, asserts that Lieber is no less qualified than Plaintiffs' expert, Alerding, to perform a damages analysis. (Def.'s Mem. at 2 and n.2.) Alitalia also argues that Lieber's opinions about the travel and tourism market as well as economic conditions are not only based upon sufficient facts and data, but are based on the same data set forth in Alerding's report with the exception that Lieber relied on additional statistics from the public records of the BTS. (*Id.* at 3-9.) Alitalia argues that Alerding's data was comprised of information from third-party sources including travel statistics from the GNTO, reports and projections by IBISWorld, Inc., and travel and tourism forecasts by the Economist Intelligence Unit. (*Id.* at 3.)

Alitalia further asserts that because Plaintiffs cannot quibble over the very data sources Alerding relied on, they are reduced to complaining instead that Lieber did not rely on other information regarding market conditions in the travel and tourism industry, which included *inter alia* deposition testimony, complete travel statistics, information from current or former Alitalia

---

[4](...continued)
Bureau of Transportation Statistics ("BTS") compiled and prepared by Alitalia's counsel even though the BTS statistics represented only direct flights from the United States to Greece and entirely excluded flights to Greece by Alitalia and nearly all of the other major airline carriers to Greece; (6) relied on selected or incomplete travel statistics from the Greek National Tourism Office ("GNTO") for only two years prior to the base year of 2001 rather than considering at least a five year period typically used in business valuations; and (7) performed no analysis of Alitalia's data concerning its load factors which would have shown the total available capacity on Alitalia airline flights. (Pls.' Mem. at 5-6, Pls.' Reply at 2-5.)

employees or other travel agents, and travel patterns of ethnic Greeks. (Def.'s Mem. at 4-9.) Alitalia therefore claims that Plaintiffs are either incorrect in their assertions that Lieber should have relied on additional information in developing his damages opinion or that such assertions go to the weight to be accorded Lieber's testimony and opinions, rather than their admissibility. (*Id.*)

The Court agrees that Plaintiffs' foregoing attacks on Lieber go to the weight of the evidence and not its admissibility. As we noted above, a "court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *14.38 Acres of Land,* 80 F.3d at 1078. We conclude that the weight and persuasiveness of Lieber's opinions will be better tested and assessed at trial rather than on motion practice.

However, we are persuaded by one of Plaintiffs' arguments that Lieber's testimony must be limited in one particular regard. Plaintiffs contend that Lieber relied on the work and opinion of Mike Mattson ("Mattson"), an outside statistician, who was not disclosed as an expert witness by Alitalia. (Pls.' Mem. at 6-10.) Lieber testified he used Mattson to review and comment on the reasonableness of Alerding's regression analysis because Lieber himself lacked the familiarity and expertise to do so. (*Id.* at 6-7.) Thus, Lieber's expert report expresses opinions about the statistical validity of Plaintiffs' regression analysis which are based on conclusions reached by Mattson that Lieber could not and did not verify. (*Id.* at 7.)

This evidence, which is not controverted by Alitalia, persuades the Court that Lieber cannot testify to or rely upon Mattson's analysis, because he lacks the requisite qualifications to assess the statistical validity of Plaintiffs' regression analysis. *See e.g., Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 588 (7th Cir. 2000)("Expert testimony relying on the opinions of others should, of course, be rejected if the testifying expert's opinion is too speculative . . . or the underlying basis is

9

faulty.")(citations omitted); *The Ninth Avenue Remedial Group v. Allis-Chalmers Corp.*, 141 F.Supp.2d 957, 959-61 (N.D. Ind. 2001)(barring expert's report and opinions where substantial and necessary portions of the report were prepared by non-testifying individuals which the testifying expert did not review and did not have the expertise to review). As a result, Lieber could not be effectively cross-examined about Mattson's work.

Of course, a different matter would be presented if Mattson were a testifying expert. In that event, Mattson could be cross-examined on his work, and then the validity and persuasiveness of Lieber's reliance on it could be tested. But, Mattson has not been timely disclosed as an expert witness by Alitalia. As shown by the schedule set in this case, the deadline for completing expert discovery -- which includes disclosing testifying experts -- was March 14, 2005. Thus, Mattson will not be testifying at trial. *See e.g., Commonwealth Ins. Co. v. Stone Container Corp.*, No. 99 C 8471, 2002 WL 385559, at *7 (N.D. Ill. Mar. 12, 2002)("Stone has offered no explanation for any late addition of a new expert to opine on broker liability, and we cannot think of any satisfactory one."). Accordingly, Lieber's opinions that are based on Mattson's analysis are inadmissible under Rule 702.

## CONCLUSION

In view of the foregoing, the Court denies Plaintiffs' motion to strike the report and bar the testimony of Anolik (doc. # 66) and grants in part and denies in part Plaintiffs' motion to strike the report and bar the testimony of Lieber (doc. # 63).

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: February 3, 2006