IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OLYMPIA EXPRESS, INC., an Illinois corporation; and NETOURS, LTD., an Illinois corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 02 C 2858 Magistrate Judge Schenkier |
| vs. | ) ) | |
| LINEE AEREE ITALIANE S.P.A., D/B/A ALITALIA AIRLINES, a foreign corporation, | ) ) ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER[1]

The question of whether original federal jurisdiction exists when a suit is filed by a United States citizen against a foreign party is an easy one to answer. If the foreign defendant is a "foreign state," as defined in the Foreign Sovereign Immunities Act ("FSIA"), then original jurisdiction exists under 28 U.S.C. § 1330(a) (or, under 28 U.S.C. § 1441(d) if the case was filed in state court and then removed to federal court). If, however, the foreign party is not a foreign state but, instead, merely a "subject" or "citizen" of a foreign state, then original jurisdiction exists under 28 U.S.C. § 1332, the diversity of citizenship statute (assuming the jurisdictional amount is met). But, the question of whether original federal jurisdiction, which can exist only under one of these statutory sources at the time suit is filed, can automatically change to the other source of jurisdiction due to post-suit filing

---

[1]On March 23, 2003, this case was assigned to Magistrate Judge Levin for all purposes, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and full consent of the parties (doc. # 29). Thereafter, on December 2, 2005, the case was reassigned to this Court for all purposes, including entry of final judgment (doc. # 88).

events, is a question not often encountered. That question is squarely presented by the pending motion to renew the demand for a jury trial filed by the plaintiffs in this case.

On April 17, 2002, plaintiffs, Olympia Express, Inc. and Netours, Ltd., filed this breach of contract action in the Circuit Court of Cook County, Illinois. In their state-court complaint, plaintiffs demanded a trial by jury. On April 19, 2002, defendant, Linee Aeree Italiane S.P.A., d/b/a Alitalia Airlines (hereinafter "Alitalia"), removed the case to federal court pursuant to 28 U.S.C. § 1441(d), on grounds that Alitalia was a "foreign state" as defined in the FSIA (*i.e.*, it was majority owned by the Republic of Italy), and it satisfied the other requirements for foreign state status.[2] Thereafter, plaintiffs amended the complaint to allege Alitalia's status not only as a corporation organized under the laws of Italy, but also as a "foreign state" under Section 1603(a) (Am. Compl., ¶ 2). The amended complaint further alleged that the Court possessed subject matter jurisdiction based on Alitalia status as a foreign state (*Id.*, ¶ 3).

As a foreign state, Alitalia was immune from a trial by jury. *See* 28 U.S.C. § 1441(d) ("upon removal the action shall be tried by the Court without jury"); *see also* 28 U.S.C. § 1330(a) (granting original jurisdiction of "any nonjury civil action against a foreign state . . ."). On February 14, 2003,

---

[2]Section 1603(a) of the FSIA defines a "foreign state" to include an "agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a). Section 1603(b), in turn, defines an agency or instrumentality to mean "any entity –

(1) which is a separate legal person, corporate or otherwise, and
(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b)(1)-(3). In its removal petition, Alitalia alleged that it was "a corporation duly organized and existing under the laws of the Republic of Italy with its principal place of business in Rome, Italy, and that a majority of its shares were owned by the Republic of Italy" (Removal Petition, ¶ 6). Alitalia also alleged that it was neither a citizen of the United States nor created under the laws of any third country (*Id.*, ¶ 5).

2

the parties entered into a stipulation in which they agreed that Alitalia was a foreign state as of the time of removal, and thus statutorily immune from jury trial. The parties further stipulated that if Alitalia's foreign state status changed during the pendency of this suit, plaintiffs could renew their demand for a jury trial; they further stipulated that if such a renewed demand was made prior to the filing of the final pre-trial order, Alitalia could oppose the request on any ground other than untimeliness.

On February 21, 2006, the Court entered an order requiring the final pre-trial order to be filed on May 24, 2006 (doc. # 95). In a motion filed on April 11, 2006 (doc. # 100), plaintiffs renewed their demand for a jury trial. Plaintiffs based their demand on the newly-discovered but undisputed fact that as of December 2005 and continuing to the present, the Republic of Italy no longer owned a majority of the shares of Alitalia and that, accordingly, Alitalia was (and is) no longer a "foreign state" within the meaning of Section 1603(a).[3]

The Court received briefing by the parties on plaintiffs' motion for a jury trial. After reviewing those briefs, during a proceeding in open court on May 24, 2006, the Court orally advised the parties of its intent to grant plaintiffs' request for a jury trial on the ground that Alitalia, because it no longer was a foreign state, no longer was entitled to immunity from jury trial. The Court further expressed the view that it retained jurisdiction over the case, despite Alitalia's loss of foreign state status, pursuant to the Court's diversity jurisdiction over suits that meet the jurisdictional amount (such as this action) between citizens of a State (such as plaintiffs) and citizens or subjects of foreign states (such as Alitalia). *See* 28 U.S.C. § 1332(a)(2). However, the Court invited the parties to submit supplemental briefs on the question of the Court's continuing jurisdiction. Both

---

[3]The parties entered into a stipulation on these matters on May 9, 2006 (Pls.' Reply Br., Ex. A).

sides accepted that invitation; and in its supplemental brief (doc. # 117), Alitalia asked the Court to certify the jurisdictional rulings and jury trial questions for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).

This Court has carefully considered the parties' arguments, the case law cited by the parties, and additional, relevant case law. For the reasons that follow, we conclude as follows: (1) because Alitalia is no longer a foreign state, it no longer can avail itself of immunity from a jury trial; (2) while Alitalia's loss of foreign state status makes the FSIA an inappropriate basis for continuing jurisdiction of this action, the case properly remains in this Court under the original grant of diversity jurisdiction; (3) in the exercise of the discretion conferred by 28 U.S.C. § 1653 and Fed.R.Civ.P. 15(a), the Court grants the plaintiffs leave to amend their complaint to reflect the Court's diversity jurisdiction over this case; and (4) the Court denies Alitalia's request to certify these questions for an interlocutory appeal.

## I.

We begin by considering the threshold question of whether the applicability of the jury trial immunity provided by the FSIA is affected by a change in a defendant's foreign state status during the pendency of a lawsuit. Federal cases addressing that question are few and far between, no doubt reflecting that it has been uncommon for a foreign entity defendant to gain or lose foreign state status *pendente lite*. We find *Matton v. British Airways Bd., Inc.*, No. 85 CIV. 1268, 1988 WL 117456 (S.D.N.Y. Oct. 27, 1988), to be the most factually analogous case to our situation.

In *Matton*, the complaint was filed in state court by United States citizens against a corporation owned by the British government (*i.e.*, British Airways). The defendant removed the action to federal court pursuant to Section 1441(d), asserting that it was a foreign state within the

4

meaning of Section 1603 of the FSIA. Several years after removal, but only shortly after learning that the British government had divested its interest in defendant, plaintiffs served their demand for a jury trial. The district court held that after the divestiture, the FSIA no longer provided the basis for British Airways to claim immunity for jury trial. The court explained that "[t]he reasons cited in the legislative history of the FSIA for favoring non-jury trials–uniformity in decision making, foreign states' lack of familiarity with jury trials, and a fear of overly generous damage awards where a 'deep pocket' is involved–have no application once the defendant in the action no longer meets the definition" . . . of a foreign state." 1988 WL 117456, * 3. The court further explained that ignoring a post-filing a change in a defendant's foreign state status, and continuing to grant the foreign defendant jury trial immunity, "would sacrifice for no compelling reason the deeply-rooted, constitutionally protected right to a jury trial." *Id.*

The *Matton* court then addressed the effect of this analysis on the court's subject matter jurisdiction. The Court concluded that once British Airways no longer was a foreign state, diversity jurisdiction nonetheless may exist under Section 1332(a)(2), "since the action is now between 'citizens of a State and citizens or subjects of a foreign state.'" 1988 WL 117456, * 3. Based on that finding, the district court rejected plaintiffs' motion to remand. *Id.*, * 3.

Two other cases cited by the parties provide at least inferential support for the *Matton* conclusion that post-filing changes in a defendant's foreign-state status are relevant to the applicability of the FSIA. In *R.J. Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458 (9th Cir. 1984), plaintiffs brought suit in federal court under the Securities Act of 1933, 15 U.S.C. § 771(1) (and thus under the court's federal question jurisdiction) against defendant Banco Nacional de Mexico, S.A. ("Banamex"). Subsequently, during the briefing of summary judgment motions in the

5

case, Mexico nationalized Banamex. Banamex did not notify the district court of this change in status and did not raise the issue of FSIA immunity during the pendency of the summary judgment motions. Then, after judgment was entered, Banamex filed a motion to stay the judgment on the ground that it was a foreign state and thus immune from suit under 28 U.S.C. § 1604.

The district court denied the motion to stay. The district court did so not on the ground that Banamex's nationalization of the filing of suit was irrelevant, but rather on the ground that Banamex was not immune from suit, even as a foreign state, under the FSIA's commercial activity exception. *See* 28 U.S.C. § 1605(a)(2). On appeal, the Ninth Circuit affirmed the district court's ruling that the commercial activity exception to a foreign state's immunity from suit applied. The appeals court further observed that the district court could have declined to consider Banamex's immunity argument altogether, because it was not raised promptly. 739 F.2d at 1460. Significantly, the appeals court did not suggest that the immunity argument could be disregarded simply because Banamex was not a foreign state when suit commenced, but only attained that status during the pendency of the suit.

Thus, we read *Wolf* as implying that courts should consider a foreign defendant's change in foreign state status that occurs during the pendency of suit. Indeed, in *Straub v. AP Green, Inc.*, 38 F.3d 448 (9th Cir. 1994), a different panel of the Ninth Circuit interpreted *Wolf* as implying "that the FSIA may be applicable if a party that becomes a 'foreign state' after the commencement of a lawsuit promptly brings its status as a 'foreign state' to the district court's attention." *Id.* at 451.

More recently, in *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), the Supreme Court considered whether FSIA jurisdiction depends on a defendant's foreign state status at the time the acts underlying the cause of action occur, or, instead, on its foreign state status at the time the action

6

is commenced in federal court. In *Dole*, the Supreme Court answered that specific question by holding that foreign state status is determined under the FSIA "at the time suit is filed." *Id.*, at 478. In reaching that conclusion, the Supreme Court rejected the argument that immunities based on foreign state status, "like other status-based immunities, such as the qualified immunity accorded to a state actor, . . . [should be] based on the status of an officer at the time of the conduct giving rise to the suit." 538 U.S. at 478-79. The Court explained that, whereas official immunities are designed to give public officials freedom to act without fear of suit, FSIA immunity "is not meant to avoid chilling foreign status or their instrumentalities in the conduct of their business, but to give foreign states and their instrumentalities some protection from the inconvenience of suit as a gesture of comity between the United States and other sovereigns." *Id.* at 429.

The parties draw different meaning from these authorities on the question of whether FSIA jurisdiction continues to exist even if a defendant's foreign state status disappears after a suit is commenced in federal court. Relying principally on *Matton,* plaintiffs argue that the change must be considered, and, as a result, Alitalia lost its immunity from jury trial once it lost its foreign state status. Alitalia, on the other hand, argues that because it was a foreign state at the time this case was initiated, the court must conduct a non-jury trial. Alitalia makes this argument, notwithstanding that, as of December 2005, the Republic of Italy's ownership percentage slipped below 50 percent, and Alitalia thus ceased being (and is not currently) an agency or instrumentality of a foreign state.

We conclude that plaintiffs have the better of this argument. The purposes of the immunities granted to foreign states under the FSIA, as articulated by the Supreme Court in *Dole* and by courts in other cases (*see, e.g., Ruggiero v. Compania Peruana De Vapores "Inca Capac Yupanqui,"* 639 F.2d 872, 874 (2d Cir. 1981)), are: (1) to give foreign states and their instrumentalities some

7

protection from the inconvenience of suit as a gesture of comity between the United States and other sovereigns (*Dole*, 538 U.S. at 479) and/or according to foreign states the same treatment we give to our own government; (2) to promote uniformity of decision regarding where foreign governments are involved (*Ruggiero*, 639 F.2d at 877); (3) to insulate the foreign state from jury trials (a system of trial to which it is not usually subject in its own country) and thereby to protect the foreign state from the politics of lay people who might comprise the jury (*Ruggiero*, 639 F.2d at 880-81); and (4) to protect foreign states from excessive jury awards based on the view that a foreign government would be a "deep pocket" (*Matton*, 1988 WL 117456, *3). It would undermine these purposes to cabin the time period for assessing FSIA jurisdiction to the time of filing alone.

Post-filing and/or post-removal events can strip a party of its foreign state status, as is the case here, or it can create foreign state status where previously there was none. A rule that required us to ignore the fact that a foreign defendant becomes a foreign state only after suit is filed could frustrate the purposes of FSIA immunity, by subjecting the foreign state to the very elements and risks of our system that the FSIA allows a foreign state to avoid. Similarly, a rule that required us to ignore the fact (as here) that a foreign party loses its foreign state status after suit is filed would result in extending jury trial immunity to an entity that no longer is a foreign state. We agree with *Matton* that to continue to treat a foreign defendant as a foreign state after it lost that status would deprive United States' citizens of a jury trial without advancing the purposes of the FSIA.

Alitalia argues that this result is nonetheless required because *Dole* held that foreign state status is determined at the time of suit, and thus should be interpreted to mean that post-suit filing events concerning foreign state status should not be considered (Alitalia's Mem. at 3-4). We disagree. To begin with, *Dole* did not address the question presented here. To decide as between

8

the time of the challenged conduct and the time of suit as the trigger for determining the applicability of the FSIA and its attendant immunities, as the Supreme Court did in *Dole*, is not the same thing as deciding whether post-suit events are relevant to the FSIA analysis. Moreover, the rationale employed by *Dole*, which focuses on the purposes to be served by FSIA immunity, is consistent with the analysis adopted in *Matton* and that we use here. Considering post-suit developments in a defendant's foreign state status is essential to furthering the purposes of the FSIA without unnecessarily limiting the right of a United States citizen to jury trials in suits brought in United States courts.

Alitalia has cited two additional cases that it believes support the contrary view: *Pere v. Nuovo Pignone, Inc.*, 150 F.3d 477, 481 (5th Cir. 1998) and *Kern v. Jeppesen Sanderson, Inc.*, 867 F. Supp. 525, 530 (S.D. Tex. 1994). We find these cases inapposite. Neither case involves the question presented here. Rather, *Pere* and *Kern* both addressed the question presented in *Dole*: whether FSIA jurisdiction is determined based on foreign state status at the time of the conduct at issue, or instead at the time of commencement of suit. Moreover, both of those decisions chose foreign state status at the time of the conduct at issue as the trigger point for FSIA jurisdiction, a choice that has proven incorrect in light of *Dole*. Thus, we do not find either *Pere* or *Kern* persuasive authority for the position advanced by Alitalia.[4]

---

[4] For the same reasons, we also find unpersuasive the decision in *Chase & Sanborn Corp. v. Granfinanciera, S.A.*, 835 F.2d 1341 (11th Cir. 1988), a case that follows the same path as *Pere* and *Kern* but that was not cited by the parties. In that case, Chapter 11 trustee brought an action in federal court under the bankruptcy laws against Columbian defendants to avoid allegedly fraudulent transfers. The district court had original federal question subject matter jurisdiction over the case. However, the defendant, Granfinanciera contended that it was immune from suit under the FSIA because it was nationalized by the Columbian government less than one month after suit and thus became an instrumentality of that country. The district court held, and the Eleventh Circuit affirmed, that the FSIA was "inapplicable to the case at bar because the transfers in question and the suit to recover those transfers occurred before Granfinanciera was nationalized." *Id.*, at 1347. In so holding, the Eleventh Circuit focused on the fact that Granfinanciera was not nationalized–and was not a foreign state–at the time of the underlying transactions in issue. That rationale cannot stand after *Dole*.

Based on the foregoing analysis, we conclude that the purposes of the FSIA are properly served by considering changes in a defendant's foreign state status that may occur during the pendency of suit. In this case, it is undisputed that while Alitalia was a foreign state at the time this case was brought to federal court, it no longer remains a foreign state. In light of its loss of foreign state status, Alitalia no longer can claim immunity from a jury trial. Accordingly, we grant plaintiffs' renewed demand to have this case tried before a jury.

## II.

That brings us to the second question raised by plaintiffs' motion: whether the Court retains any continuing jurisdiction over a case where the FSIA jurisdiction that existed at the time suit was filed is lost because the defendant loses its foreign state status prior to trial. Only *Matton* has considered this question; that court suggested that diversity jurisdiction may take the place of FSIA jurisdiction post-suit when a defendant loses foreign state status during the pendency of suit. But, *Matton* was decided before *Dole*. Since *Dole*, no court has addressed this question. Based on *Matton*, 1988 WL 117456, and *Dole*, 538 U.S. at 468, as well as the purposes and structure of the FSIA and the grant of diversity jurisdiction in 28 U.S.C. § 1332(a)(2), this Court finds that the grant of diversity jurisdiction in Section 1332(a)(2) gives us continuing jurisdiction over this case even though FSIA jurisdiction no longer exists.

The rationale for this conclusion is based, at the outset, on our view that the FSIA applies both for purposes of jurisdiction and for jury trial immunity. Section 1330(a) grants the federal courts original jurisdiction "of any non-jury civil action against a foreign state as defined in section 1603(a)"; similarly, Section 1441(d) creates removal jurisdiction for a suit against a foreign state defendant only for a trial "by the court without jury." We read this language as a non-severable

package, or an integrated whole; it makes no sense to look at post-removal events selectively (*i.e.*, for purposes of jurisdiction but not for jury trial). Having concluded that Alitalia's loss of foreign state status is relevant to the issue of jury trial immunity, the Court further concludes that it also is relevant to whether the FSIA continues to provide a basis for subject matter jurisdiction. We hold that once Alitalia ceased being a foreign state, it lost immunity from jury trial under the FSIA, and the Court lost FSIA jurisdiction.

That said, we also hold that there was no point in time when diversity jurisdiction, which remained dormant during the period of the FSIA's exclusive jurisdiction, did not rise up to cover Alitalia as a foreign citizen and replace the original basis for this Court's jurisdiction. Section 1332(a)(2) states, in relevant part:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between–
> \*\*\*\*\*\*\*\*\*
> (2) citizens of a State and citizens or subjects of a foreign state.

28 U.S.C. § 1332 (a)(2). When a foreign corporation, such as Alitalia, is sued in federal court on a state law claim, there are two potential bases for original federal jurisdiction: diversity and the FSIA. The Supreme Court has held that the FSIA confers exclusive jurisdiction where it applies. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). But, that does not change the fact that, where a foreign state is sued by an American citizen in the United States courts, there exists a seamless source of original jurisdiction. In other words, at all times this case has remained within one of two grants of jurisdiction: FSIA jurisdiction (under Section 1441(d) when

11

the case was removed and then Section 1330(a) when plaintiff amended the complaint, or 28 U.S.C. § 1332(a)(2).

The seamless character of our subject matter jurisdiction is not altered by the fact that FSIA jurisdiction is exclusive while it exists. That exclusivity means diversity jurisdiction cannot be a jurisdictional ground upon which the parties stand at the time FSIA jurisdiction exists. That is because, as Alitalia correctly notes, "an instrumentality of a foreign state cannot simultaneously be treated as a foreign state *and* as a *citizen* of a foreign state" (Final Pretrial Order, Schedule A) (emphasis in original). However, while Alitalia could not be treated simultaneously as a foreign state under Section 1330(a) and as a subject or citizen of a foreign state under Section 1332(a)(2), that does not mean that Alitalia was not in fact both a foreign state and a citizen or subject of Italy when the case was removed to federal court. Indeed, in its removal petition, Alitalia made the factual allegation that it was majority-owned by the Republic of Italy (essential to foreign state status and thus to FSIA jurisdiction) *and* that it was a corporation duly organized and existing under the laws of the Republic of Italy with its principal place of business in Rome, Italy (essential to showing that it is a subject or citizen of the Republic of Italy as required for diversity jurisdiction). Once Alitalia lost its foreign state status and FSIA jurisdiction evaporated, it did not leave a gap or a void, because the underlying facts necessary for Section 1332(a)(2) diversity jurisdiction existed at the time this suit was removed to federal court. Thus, Section 1332(a)(2) automatically provides the source of jurisdiction once Section 1330(a) drops out.

### III.

As explained above, the Court concludes that it has diversity jurisdiction in this case. The question now is how we recognize that jurisdiction, given that the amended complaint alleges FSIA

12

jurisdiction but not diversity jurisdiction. Like the *Matton* court, we could just recognize that we have continuous jurisdiction and move on without any alteration to the pleadings. *Matton*, 1988 WL 117456, * 3. However, we think the cleaner approach is to allow plaintiffs to amend the complaint to reflect this existing ground for jurisdiction.

In forming this view, the most helpful case we found is *Whitmire v. Victus Limited T/A Master Design Furniture*, 212 F.3d 885 (5th Cir. 2000). In *Whitmire*, the Fifth Circuit addressed the core issue presented here, namely, whether a plaintiff may set forth diversity as an alternate basis for jurisdiction by amending her complaint pursuant to 28 U.S.C. § 1653 (1994), after the jurisdictional basis upon which the case was removed no longer exists. *Id.* at 887-888. In *Whitmire*, the plaintiff had asserted federal question jurisdiction for certain federal claims and supplemental jurisdiction for her state law claims. The district court granted defendant summary judgment on the federal claims, and dismissed the supplemental state law claims without prejudice. The plaintiff then sought to amend the complaint to assert diversity jurisdiction as a basis for continuing federal jurisdiction over the state law claims. The district court denied leave to amend the jurisdictional basis.

On appeal, the Fifth Circuit reversed, holding that the district court had abused its discretion by denying leave to amend. The appeals court cited to Section 1653, which provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 212 F.3d at 887. The court further stated that Section 1653 is "to be broadly construed to avoid dismissals of actions on purely 'technical' or 'formal' grounds." *Id.* (citations omitted). The court explained that the "power to authorize amendments . . . under Section 1653, and by extension under Rule 15(a) [Federal Rules of Civil Procedure], turns upon the nature of the jurisdictional defect." *Id.* at 888 (citation omitted). The appeals court noted that Section 1653 allows amendments to

13

remedy inadequate jurisdictional allegations, but not "defective jurisdictional facts." *Id.* (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989)). In applying that distinction, the court considered the underlying concern that animates it: "[t]he danger against which a court must guard is that a party will attempt to use § 1653 to retroactively create subject matter jurisdiction." *Id.* In *Whitmire*, the appeals court found that plaintiff's proposed amendment was permissible–and that it was indeed an abuse of discretion for the district court to deny it–because the amendment would not allow plaintiff to retroactively create subject matter jurisdiction that did not previously exist; rather, it would merely allow plaintiff to amend the complaint to reflect an alternative basis for jurisdiction that had existed from the outset of the case. 212 F.3d at 888-89.[5]

The *Whitmire* analysis persuades us that the appropriate course here is to allow plaintiffs to amend the complaint to allege diversity jurisdiction under Section 1332(a)(2). In *Whitmire*, the plaintiff could have asserted, at the outset, diversity as an alternative basis for federal jurisdiction over the state law claims. But, there was no need for plaintiff to have done so, since supplemental jurisdiction provided an adequate basis for federal jurisdiction over those claims; the only reason for plaintiff to have plead an alternative basis for jurisdiction would have been as a hedge against a later loss of supplemental jurisdiction. Likewise, in our case, once Alitalia removed the suit to federal

---

[5]We note parenthetically that the Second Circuit, in *Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565, 567-68 (2d Cir. 2000), a case decided a few months after *Whitmire*, stated that "while a complaint must present certain quite particular allegations of diversity jurisdiction in order to be adequate, the actual *existence* of diversity jurisdiction, *ab initio*, does not depend on the complaint's compliance with these procedural requirements." The *Jacobs* court further indicated that the Supreme Court in *Newman-Green* even suggested that the federal courts have the power to recognize diversity jurisdiction *nunc pro tunc* even without adequate pleadings because adequate pleading is not a necessary element of diversity jurisdiction. The *Jacobs* court held: "This is the only conclusion consistent with the established practice that when a defendant moves, under Fed.R.Civ.P. 12(b)(1), to dismiss a complaint that inadequately pleads diversity jurisdiction (under circumstances in which extrinsic or subsequently adduced evidence shows that diversity exists), then the court "may [either] deny the motion and direct the pleader to amend, or it may dismiss with leave to amend." *Id.* at 568 (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 at 223). We agree with the reasoning of the *Jacobs* court. It is also consistent with what the *Matton* court did, without the same degree of explanation.

court and plaintiffs amended their complaint to allege federal jurisdiction based on Alitalia's foreign state status, they also could have asserted diversity as an alternative jurisdictional basis. But, there was no need for plaintiffs to do so, since the FSIA provided the exclusive basis for federal jurisdiction over Alitalia. The only reason for plaintiffs to have plead diversity as an alternative basis for jurisdiction would have been to account for the possibility that in fact has arisen here: Alitalia's loss of foreign state status prior to trial.

Moreover, here, as in *Whitmire*, allowing an amendment to assert diversity jurisdiction would not be a misuse of Section 1653, because it would not constitute an after-the-fact attempt to create federal jurisdiction where none originally existed. As we have explained, federal jurisdiction existed in this Court at the time of removal, because Alitalia was a foreign state. Once that exclusive source of jurisdiction disappeared upon Alitalia's loss of foreign state status, diversity jurisdiction immediately existed under Section 1332(a)(2) based upon satisfaction of the jurisdictional amount and Alitalia's status as a citizen or subject of a foreign state.

For these reasons, we will give plaintiffs leave to amend the complaint, pursuant to Federal Rule of Civil 15(a), to allege diversity jurisdiction. This exercise of our discretion is consistent both with the policy of liberally allowing amendments to pleadings under Rule 15(a), *Foman v. Davis*, 371 U.S. 178, 182 (1962), and with the policy under Section 1653 of avoiding dismissal of actions on technical or formal grounds. *Whitmire*, 212 F.3d at 887. Plaintiffs shall file the amended complaint by June 22, 2006; defendant shall answer the amended complaint by July 10, 2006.

### IV.

Alitalia has asked that we certify "any order on subject matter jurisdiction or requiring a jury trial for immediate appeal pursuant to 28 U.S.C. § 1292(b)" (Alitalia's Supp. Submission, at 8).

Certification under 1292(b) "is the exception, not the rule." *In re Brand Name Prescription Drugs*, 1998 WL 808992, at * 3 (N.D. Ill. Nov. 17, 1998). The movant "bears a heavy burden" of demonstrating that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after entry of final judgment." *Id.*

To satisfy this burden, the party seeking certification must demonstrate all three factors identified in Section 1292(b). Section 1292(b) permits a court to certify an order for immediate appeal if the order involves: (1) a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000).

The Seventh Circuit defines a "controlling question of law" as an issue "the court of appeals could decide quickly and cleanly without having to study the record," such as the meaning of a statutory provision. *Ahrenholz*, 219 F.3d at 676-77. This case presents classic controlling questions of law: (a) does FSIA jurisdiction, which attached at the time the suit was removed and thus filed in this Court, survive post-suit filing changes in a party's foreign state status, and, if not, (b) does diversity jurisdiction under 28 U.S.C. § 1332(a)(2) rise up to take its place once the party ceases to be an instrumentality of a foreign state and is then merely a citizen or subject of a foreign state. Thus, we conclude that Alitalia's request satisfies this first concern for immediate appeal.

However, Alitalia has failed to establish the second prerequisite to Section 1292(b) certification: that there exists a "substantial ground for difference of opinion" about the Court's rulings. To demonstrate that there is a substantial difference of opinion on a question of law, the movant must show that either (a) "there are substantial conflicting decisions regarding the claimed

16

controlling issue," *or* (b) where the controlling question "is not settled by controlling authority," there is "a substantial likelihood" that the district court's decision will be reversed on appeal. *Gamboa v. City of Chicago*, No. 03 C 219, 2004 WL 2877339, at *4 (N.D. Ill. Dec. 13, 2004). The movant may not prevail by simply showing a "lack of judicial precedent" or that the issue is one of first impression. *In re Bridgestone/Firestone, Inc.*, 212 F.Supp.2d 903, 909 (S.D. Ind. 2002). Instead, the party seeking certification must show "substantial conflicting positions regarding the issue of law proposed for certification." *Id.*

Although the questions presented are novel, Alitalia has not demonstrated any substantial grounds for a difference of opinion regarding resolution of these questions. Alitalia has not shown us that "there are substantial conflicting decisions regarding the claimed controlling issue" or that there is a substantial likelihood that our decision to take diversity jurisdiction, because we believe FSIA jurisdiction no longer exists, will be reversed on appeal.

As we have explained above, the case most directly on point is *Matton*. That decision supports the Court's decisions both to consider post-suit changes in a defendant's foreign state status for purposes of determining a plaintiff's right to a jury trial, and to retain jurisdiction of the case once the defendant's foreign state status is lost. Other cases – *Wolf* and *Straub* – also provide at least inferential support for the *Matton* approach.

Contrary to Alitalia's argument, the Supreme Court decision in *Dole* does not undermine *Matton*. *Dole* resolved a different question than the one presented in *Matton*: that is, whether applicability of the FSIA is determined by a defendant's foreign state status at the time of the conduct at issue in suit as opposed to its status at the time suit is commenced. By holding that foreign state status is determined by reference to the time of suit rather than the time of the conduct

at issue, the Supreme Court did not address (and did not decide) the significance of post-suit developments in a defendant's foreign state status. Indeed, rather than casting doubt on *Matton*, the Supreme Court's discussion of the purposes of FSIA immunity is consistent with the analysis of *Matton*.

The other "conflicting decisions" cited by Alitalia do not cast doubt on our decision here. *Pere* and *Kern* (as well as *Granfinanciera*) held that the FSIA status is determined by reference to a defendant's foreign state status at the time of the conduct alleged rather than at the time of suit – an approach specifically rejected by *Dole*. We note that one of the cases cited in *Kern* (but not advanced by Alitalia) suggests that even after a foreign defendant loses its foreign party status, the policies underlying the FSIA still may hold sway because a "foreign state may remain financially responsible for any judgments won against a former state-owned entity." *Cargill International S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993). However, that statement in *Cargill* is *dicta*; in that case, the foreign state defendant was only in the process of privatization, and thus it remained a foreign state under the FSIA. 991 F.2d at 1016.

Moreover, the *Cargill* court's statement about continuing application of the FSIA's policies after a corporation is no longer a foreign state is at odds with the analysis in *Dole*. In *Dole*, the Supreme Court held that in order to qualify as a foreign state under the "instrumentality" prong of the FSIA in the first instance, a foreign state itself must own a majority of the corporation's shares; it is not enough for there to be "indirect" ownership of a corporation through other corporations owned by the foreign state. 538 U.S. at 475-77. To recognize FSIA jurisdiction over a corporation no longer owned by the foreign government would be inconsistent with the Supreme Court's strict reading of the phrase "majority ownership" in the FSIA.

The *Dole* court also held that the FSIA did not apply in a case where the corporate defendants were foreign states at the time of the conduct at issue, but had lost that status by the time suit commenced. We doubt that the Supreme Court would have reached this result if it had considered as relevant to FSIA jurisdiction the presence of any lingering obligations a foreign government might have for divested corporations. Yet, that consideration was not one that the Supreme Court even discussed, much less found controlling. Thus, we read *Dole* as an implicit rejection of the proposition that a foreign government's possible lingering obligations for an entity it no longer majority-owns is a sufficient basis for treating an entity as a foreign state when in fact it is not.

In sum, the Court concludes that its decision is consistent with the (admittedly) scant case law that bears on this question, with the policies underlying FSIA immunity as recognized in *Dole*, and with the goal of Section 1653: to allow amendments of pleadings to avoid dismissal of cases on formal or technical grounds, but to prevent amendments that attempt to create federal jurisdiction where none originally existed. Thus, we conclude that, although our rulings today present controlling questions of law, Alitalia has failed to meet its burden of showing that there is a substantial ground for difference of opinion as to their resolution. Accordingly, even assuming an immediate appeal might materially advance the ultimate termination of this litigation, Alitalia has failed to establish the basis for an interlocutory appeal. Alitalia's motion for Section 1292(b) certification for immediate appeal is therefore denied.

## CONCLUSION

For the reasons set forth above, plaintiffs' renewed motion for a jury trial (doc. # 100) is GRANTED. By June 22, 2006, plaintiffs shall file an amended complaint to allege diversity jurisdiction; by July 10, 2006, Alitalia shall file its answer to the amended complaint. Alitalia's

request for certification for interlocutory appeal pursuant to 28 U.S.C.§ 1292(b) (doc. # 117) is DENIED.

ENTER:

_____
SIDNEY I. SCHENKIER
United States Magistrate Judge

**DATED: June 14, 2006**