IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OLYMPIA EXPRESS, INC., an Illinois )
corporation; and NEOTOURS, LTD., an Illinois )
corporation, )
)
Plaintiffs, ) No. 02 C 2858
)
vs. ) Magistrate Judge Sidney I. Schenkier
)
LINEE AEREE ITALIANE S.P.A., )
D/B/A ALITALIA AIRLINES, a foreign )
corporation, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

In an opinion issued on November 30, 2007, the Seventh Circuit reversed the judgment against defendant following a jury trial that was conducted before this Court. *See Olympia Exp., Inc. v. Linee Aeree Italiane, S.P.A.*, 509 F.3d 347 (7th Cir. 2007). Presently before the Court is defendant's bill of costs, filed subsequent to the Seventh Circuit's November 30, 2007 opinion, which seeks taxable costs in the amount of $75,129.21 (doc. # 218). For the reasons that follow, defendant's bill of costs is granted, but in a reduced amount. We award defendant $71,488.21 in taxable costs under Federal Rule of Appellate Procedure 39(e).

I.

On October 4, 2006, a jury awarded plaintiffs $8.5 million on their claims against defendant for breach of contract.[1] On February 27, 2007, the Court issued a Memorandum Opinion and Order

---

[1] We assume familiarity with prior opinions in this case. *See, e.g., Olympia Express, Inc. v. Linee Aeree Italiane, S.P.A.*, No. 02 C 2858, 2007 WL 641557 (N.D. Ill., Feb. 27, 2007), *rev'd*, 509 F.3d 347 (7th Cir. 2007). Thus, we will recite background facts about the case only insofar as necessary to address the pending bill of costs.

that, *inter alia*, denied defendant's motion for a new trial, but on the condition that plaintiffs accept a remittitur of $2 million, thereby reducing the award to $6.5 million. On March 15, 2007, plaintiffs accepted the remittitur (doc. # 193). On that same date (even before this Court entered an amended judgment to reflect the reduced judgment (*see* doc. #196)), plaintiffs issued a citation to discover assets (doc. # 194), in which they signaled their intent to begin efforts to collect on the $6.5 million judgment unless defendant posted an appeal bond.

During a status hearing on March 22, 2007, the issue of plaintiffs' collection efforts was brought to the Court's attention, as was defendant's intention to appeal the judgment. That status hearing resulted in an order directing defendant to "post an appeal bond of $7,000,000 to secure the judgment, interest, and award of costs pending any appeal," and barring plaintiff from taking "any action to enforce the judgment, including any action on any outstanding citations, prior to 03/30/07" (doc. # 195).

On March 28, 2007, defendant filed a notice of appeal (doc. # 197). Thereafter, on March 30, 2007, defendant posted a $7,000,000 appeal bond (doc. # 199), which defendant substituted with a replacement $7,000,000 appeal bond on April 2, 2007 (doc. # 201). In the face of this bond and the Court's March 22, 2007 order, plaintiffs pursued no further collection efforts.

On November 30, 2007, the Seventh Circuit reversed the February 27, 2007 judgment of this Court, holding that defendant was entitled to a nonjury trial. The Seventh Circuit left it to this Court to decide whether "the development of the facts at the first trial was sufficient to enable [the trial court] to make his own findings of fact and conclusions of law on both liability and damages[,]" and thus whether it is necessary to conduct any further evidentiary hearings on remand. *Olympia Express*, 509 F.3d at 352. The Seventh Circuit further held that in any proceedings in this Court on

remand, plaintiffs' contract claim "shall . . . be limited to the 2001 time period," rather than the five-year period of 2001 through 2005 that was used during the first trial. *Id.* at 353. The Seventh Circuit's judgment order, also issued on November 30, 2007, stated that the case reversed was "with costs," and remanded for further proceedings "in accordance with the decision of this court . . ." (Def.'s Reply Mem., Ex. A).

Thereafter, on December 28, 2007, defendant filed a bill of costs (doc. # 218). However, at that time, a petition for rehearing remained pending in the Seventh Circuit, and the mandate had not yet been returned to this Court. Accordingly, on January 10, 2008, the Court suspended any briefing on the bill of costs (doc. # 220). After denial of the petition for rehearing, the mandate was returned to this Court on January 22, 2008 (doc. # 222). Thereafter, defendant filed a new bill of costs (doc. # 225). In that bill of costs, defendant seeks to recover $75,129.21, consisting of the following expenses: (1) $5,124.21 for the costs of the reporter's transcript needed to determine the appeal; (2) $5.00 for filing the notice of appeal; and (3) $70,000.00 in premiums paid for the supersedeas bond.[2]

---

[2] The original bill of costs (doc. #218) sought the same amounts for transcripts and the supersedeas bond, but sought a greater amount – $455.00 – for the cost of filing the notice of appeal. Seizing on this reduction, plaintiffs do not challenge the award of $5.00 for filing the notice of appeal (Pls.' Opp. at 2 n.1). We note that the greater amount seems supported by the receipt attached to both bills of costs (doc. # 218, Ex. B; doc. # 225, Ex. B). However, defendant plainly is aware that its current bill of costs seeks only $5.00 for the cost of filing the appeal: defendant's reply brief acknowledges plaintiffs' concession (Defs.' Reply Mem. at 2), but does not say the $5.00 figure was used erroneously. Thus, we will award defendant $5.00 for the cost of filing the notice of appeal. We also strike the original bill of costs (doc. # 218) as moot in light of the superseding bill of costs (doc. #225) defendant has filed.

3

**II.**

We begin by resolving two procedural issues raised in plaintiffs' opposition to defendant's bill of costs.

*First*, plaintiffs argue that the defendant's failure to cite the federal rule under which defendant seeks costs is fatal to defendant's claim (Pls.' Opp. at 1-2). However, the cases plaintiffs cite for this stand for the different, and irrelevant, proposition that a court must explain its award of costs. *See, e.g., Cengr v. Fusibond Piping Systems, Inc.*, 135 F.3d 445 (7th Cir. 1998) ("[o]nce again we reiterate our mandate that district court judges provide at least a modicum of explanation when entering an award of costs."). In any event, defendant's bill of costs plainly reveals the categories of costs sought, and the supporting materials show that the costs were actually incurred. The categories of costs identified in defendant's bill are precisely those that a prevailing party on appeal may seek in the district court pursuant to Federal Appellate Rule of Procedure 39(e)(2)-(4). Moreover, plaintiffs can hardly claim any prejudice or surprise from defendant's failure to cite to Rule 39(e) in the bill; plaintiffs well understood that the bill of costs was submitted pursuant to that rule (*see, e.g.,* Pls.' Opp. at 2 n.1 (conceding recovery by defendant of costs "for filing its notice of appeal under Rule 39(e)(4)")). While it would have been a better practice for defendant to cite to Rule 39(e) in its bill of costs, the failure to do so does not bar our consideration of it.

*Second*, the parties disagree as to whether our authority to award costs is based on Rule 39(a)(3) or Rule 39(a)(4). Plaintiffs urge that the issue is governed by Rule 39(a)(4), which states: "if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders." Fed.R.App.P. 39(a)(4). Based on that provision, plaintiffs argue that defendant is not entitled to recover any costs set forth in the bill, because the Seventh Circuit did not tax them as

costs; the Seventh Circuit only taxed costs for reproduction of briefs totaling $4,718.30 (Pls.' Opp. at 2-3; *see also* Defs.' Reply Mem., Ex. C (Seventh Circuit order taxing costs)). For its part, defendant claims that its bill of costs is governed by Rule 39(a)(3), which states: "if a judgment is reversed, costs are taxed against the appellee." Fed.R.App.P. 39 (a)(3). Under that provision, costs that are taxed may include not only those taxed by the Seventh Circuit, but also those that are taxable in the district court under Rule 39(e) for "the benefit of the party entitled to costs under this rule."

Defendant plainly has the better of this argument. The Seventh Circuit's judgment order is unambiguous: it states that "[t]he judgment of the District Court is REVERSED, with costs, and this case is REMANDED in accordance with the decision of this Court . . ." (Def.'s Reply Mem., Ex. A). That is consistent with the language the Seventh Circuit used in its written opinion, which closed with the words "[r]eversed and [r]emanded." *Olympia Express*, 509 F.3d at 353. This language closely tracks the language in Rule 39(a)(3). Plaintiff nonetheless asks us to interpret "reversed" to mean "vacated," so as to render Rule 39(a)(4) applicable. We decline plaintiff's invitation to hold that the Seventh Circuit did not mean what it clearly said. We therefore find Rule 39(a)(3) applicable, which means that defendant is entitled to seek costs in this Court under Rule 39(e).

We now turn to the question of whether the costs requested by defendant are recoverable.

### III.

Defendant seeks costs on appeal totaling $5,124.21 for the reporter's trial transcript. Rule 39(e)(2) authorizes payment of recoverable costs for "the reporter's transcript, if needed to determine the appeal." That language does not authorize reimbursement for any and all transcript costs, but only for those that are necessary. Conceding that one copy of the transcript was necessary for the appeal (at a cost of $1,483.21), plaintiffs argue that "the majority of reporter transcript costs sought

5

by Alitalia were not necessary" to determine the appeal (Pls.' Opp. at 6). Plaintiffs specifically contend that defendant should bear the cost of multiple copies, expedited service and the "luxury" of Realtime service utilized during the trial (*Id.* at 6-7).

In response, defendant argues that these additional costs were reasonably necessary because: (1) its counsel are located in two different states; (2) the copies were integral to determining the appeal; and (3) the amount of its request for transcript costs is far less than the amount requested and received by the plaintiffs for transcript costs by this Court following the jury trial and post-trial motions (Def.'s Reply Mem. at 10). We do not find any of defendant's arguments persuasive.

*First*, defendant's decision to employ counsel located in multiple states was a choice that defendant made, and surely was entitled to make. But that strategic choice by defendant does not justify imposing on plaintiffs the costs for multiple transcripts. Defendant has failed to explain why it was necessary to have counsel located in multiple locations, or why it was necessary (and not just convenient) for both local counsel in Chicago and lead counsel in New York to have copies of the transcript. We see no reason why more than one copy of the transcript was needed to determine the appeal.

*Second*, defendant conclusorily states that "the copies were integral to determining the appeal, and defending [the] client" (Def.'s Reply Mem. at 10). Our review of the appeals briefs filed in the Seventh Circuit confirms that defendant, indeed, relied upon excerpts from the transcript in its brief (*see Response and Reply Brief of Appellant, Cross-Appellee Linee Aeree Italiane, S.P.A.*, 2007 WL 2426662). However, defendant's use of the trial transcript in the appeal does not explain why multiple copies were necessary, much less why expedited service and Realtime service were necessary.

6

*Third*, defendant's attempt to justify expedited and Realtime service on appeal by analogizing to trial transcript costs we earlier awarded to plaintiff is misplaced. That is not an apples to apples comparison, because pursuing an appeal is a much different enterprise than conducting a trial. In the press of trial, daily transcripts and expedited service can be a reasonable necessity. As we earlier found here, the cost of daily trial transcripts during the six-day trial was "reasonable in order to minimize any disagreement or ambiguity" in witness testimony, which was particularly important here since many of the witnesses testified in English although it was not their native language. *Olympia Exp., Inc. v. Linee Aeree Italiane S.P.A.*, No. 02 C 2858, 2007 WL 641557, *24 (N.D. Ill. 2007). The daily time demands placed on counsel during trial are far different from those that counsel confront at the appellate stage of litigation. In this case, the trial concluded on October 4, 2006; this Court ruled on post-trial motions on February 27, 2007; defendant filed its notice of appeal on March 28, 2007; and defendant filed its opening appeals brief on June 8, 2007. In light of this time line, we see no basis for defendant to claim that costs for expedited and Realtime service were necessary to the appeal.

Accordingly, we award defendant costs for one copy of the trial transcript, in the amount of $1,483.21 (1787 pages x $0.83 per page).

## IV.

Rule 39(e)(3) authorizes payment of costs for "premiums paid for a supersedeas bond or other bond to preserve rights pending appeal[.]" Fed.R.App.P. 39(e)(3). Pursuant to this provision, defendant seek $70,000.00 for the premium paid on March 29, 2007 to post an appeal bond in the amount of $7,000,000.00. Plaintiffs offer two arguments in opposition to this request, which we address – and reject – below.

7

# A.

Plaintiffs' threshold argument is that defendant is not entitled to recover the costs of the premium paid to obtain the supersedeas bond, because "the supersedeas bond posted in this case was not required by this Court, but rather was posted at Alitalia's own discretion" (Pls.' Opp. at 5) (emphasis in original). This argument is, to put it generously, an exercise in revisionist history.

When accepting the remittitur on March 15, 2007, plaintiffs expressly stated their intent to "commence execution proceedings by serving upon Alitalia a Citation to Discover Assets" (*see* Def.'s Reply Mem., Ex. D (Pls.' Submission Regarding Remittitur, ¶ 5)), which they did that very day (*Id.*, Ex. E (Citation to Discover Assets)). In that citation, plaintiffs stated that they would proceed to discover defendant's assets "unless Alitalia, prior to March 30, 2007, posts a supersedeas bond . . ." (*Id.*). Following those affirmative steps taken by plaintiffs to enforce the judgment, this Court ordered defendant to "post an appeal bond of $7,000,000.00 to secure the judgment, interest and any award of costs pending appeal" (doc. # 195; Minute Order, March 22, 2007). That order also prohibited plaintiff from taking any action to enforce the judgment unless the defendant failed to post "the required appeal bond" (*Id.*).

This sequence of events makes clear that the only way in which it could be said that defendant was not "required" to post the appeal bond is if defendant was content to ignore the Court's order, to fail to secure a bond, and to allow plaintiffs to pursue collection of the $6.5 million judgment pending appeal. If that kind of choice were enough to make a defendant who posts a bond a mere volunteer, then all defendants who post a bond are volunteers. Any defendant appealing a money judgment has that same choice: put up a bond, or allow collection efforts to proceed. Such

a proposition would prove far too much, and it would routinely make the cost of an appeal bond unrecoverable.³ That plainly is not the intent of Rule 39(e)(3).

B.

Plaintiffs also argue that they should not be ordered to pay the costs of an appeal bond "before final adjudication on the merits" of the case, because "the Seventh Circuit's reversal of the jury verdict was not based on the substantive merits of the case" (Pls.' Opp. at 6). Plaintiffs also argue that addressing questions regarding costs now would "pose a serious risk of distracting the court and the parties from the principal issues in this litigation" (*Id.* at 3) (citing *Ross-Simmons Hardwood Lumber Co. v. Weyerhaeusuer Co.*, No. CV 00-1693-PA, 2007 WL 2050869 (D. Or. July 5, 2007)). We reject each of these arguments in turn.

*First*, "final adjudication on the merits" is not a prerequisite to a prevailing party as appeal's right to obtain taxable costs under Rule 39. Under Rule 39(a)(3), which we already have held applies here, "if a judgment is reversed, costs are taxed against the appellee." While some courts may choose to wait until all claims are resolved in the case on remand, *see, e.g., Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 627 (8th Cir. 2003), courts likewise have the discretion to make this determination at this stage of the litigation. *See Guse v. J.C. Penney*, 570 F.2d 679 (7th Cir.1978) ("[T]he district court is in a better position than [the court of appeals] to make this determination with regard to the costs taxed against the losing party in that court").

---

³Unlike the court in *Campbell v. Rainbow City, Alabama*, 209 Fed. Appx. 873 (11th Cir. 2006), cited by plaintiffs, this Court would not "have waived the bond requirement if it had been asked" to do so by the defendant. *Campbell*, 209 Fed. Appx. at 876. The order of this Court dated March 22, 2007 requiring defendant to obtain a supersedeas bond underscores this point.

9

Moreover, plaintiffs' argument that defendant achieved only a procedural victory fails to give full weight to the victory defendant achieved on appeal. The Seventh Circuit's interpretation and application of the Foreign Sovereign Immunities Act was indeed a final adjudication of the jury trial question: plaintiffs are no longer entitled to a jury in this case. *Olympia Express,* 509 F.3d at 352. The Seventh Circuit also made a significant merits determination of plaintiffs' contract claim. The Seventh Circuit held that the written contract on which plaintiffs relied lacked certain essential terms required for it to be enforceable, and that the written contract could not be salvaged by using oral evidence "to fill in the missing gaps." *Id.* at 352. As a result, the appeals court held that on remand, liability and damages issues will be limited to the 2001 time period, and not the 2001 through 2005 time period that plaintiffs used at trial but unsuccessfully defended on appeal. *Id.* That was a substantial merits victory for defendant, which will greatly affect plaintiffs' provable damages at trial. Thus, even if plaintiffs' prevail on liability at a retrial, we do not envision how their damage recovery can match what they achieved at the first trial.

*Second,* plaintiffs do not explain, and we are at a loss to see, how deciding the bill of costs now would pose a "serious risk of distracting the court and parties from the principal issues in this litigation." *Ross-Simmons Hardwood Lumber Co. v. Weyerhaeusuer Co.*, No. CV 00-1693 PA, 2007 WL 2050869, *4 (D. Or. July 5, 2007). Even if *Ross-Simmons* was binding precedent in the Seventh Circuit, which it is not, we are not presented with a claim for $1,013,589.25 in costs, as in *Ross-Simmons*, and our decision today is unlikely to "spawn collateral litigation." *Ross-Simmons,* 2007 WL 2050869, at *3. We see no good reason to delay payment of defendant's legitimate cost of obtaining the appeal bond.

## CONCLUSION

For the foregoing reasons, we grant defendant's bill of costs (doc. # 225) in the reduced amount of $71,488.21, consisting of $1,483.21 in transcript costs, $5.00 in filing fees, and $70,000.00 for the cost of premiums paid for a supersedeas bond.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: March 19, 2008